# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| TONYA JENKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-03003-CV-S-BP |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's decision denying her application for disability benefits. For the following reasons, the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

Plaintiff was born in January 1968, has earned her GED, and has prior work experience as a human resources clerk and personnel recruiter. She filed her application in February 2019 and alleged an onset date of September 1, 2017.

The Administrative Law Judge ("ALJ") found that Plaintiff suffers from degenerative joint disease and other ailments related to her shoulders, seizure disorder, anxiety, "mild neurocognitive disorder due to" other medical conditions, and migraines. (R. at 13.) The ALJ further found that Plaintiff retains the residual functional capacity, ("RFC"), to, among other things, perform light work subject that is limited to "simple, routine, repetitive tasks in other than fast-paced production environments" and that is further limited in respects that are not relevant to

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and is automatically substituted as the Defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

the issues before the Court. (R. at 18.) Based on the testimony of a vocational expert, ("the VE"), the ALJ found that Plaintiff could not return to her past work but could perform work as a production assembler, swatch clerk, or packing header. (R. at 24-25.)

Plaintiff challenges the ALJ's RFC finding, contending that it should account for the limitations she described related to her migraines. The Commissioner argues that the ALJ did not err. The Court resolves these arguments below.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. *E.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. . . . As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citations omitted).

At the hearing – which was held on February 19, 2020 – Plaintiff testified that she has experienced migraines since she was a teenager and that in the early 2000s she began experiencing them four to six times per month. (R. at 84-85.) She conceded that she had previously been able to work despite her migraines but testified that they had gotten worse in that they were more frequent and intense. She still experiences them four to six days a month but now they last two to

seven days and are more intense such that all she can do is stay in bed. (R. at 84-85.) Plaintiff contends that the ALJ failed to explain why Plaintiff's testimony was insufficient or why he declined to include these limitations in the RFC. The Court disagrees.

The ALJ acknowledged Plaintiff's testimony, (R. at 19-20), and frequently discussed Plaintiff's migraines in the same discussion with her other ailments. He concluded that "claimant had and continues to have history of treatment for well-documented seizure disorder and migraine headaches, prior to and during the relevant period herein," (R. at 20), but that her "complaints regarding the severity and limiting effects of her symptoms are inconsistent with a finding of disability." (R. at 21.)

In making these findings the ALJ addressed Plaintiff's treatment and medical records, explaining that they "do not support the level of debility alleged by the claimant," and for support the ALJ cited numerous medical records related to all her impairments. (R. at 22.)[2] Those records reflect that on September 19, 2017 – approximately three weeks after Plaintiff's alleged onset date – Plaintiff went to the doctor for a physical and complaints of generalized joint pain, but there was no mention of increased frequency or severity of migraines. (R. at 330.) She also went to the doctor for a routine exam in May 2018 and expressed no concern about her migraines. (R. at 817-19.) In September 2018, Plaintiff reported that she might be experiencing "mini-seizures" at night while sleeping; the fact that she had migraine headaches since she was a teenager was discussed, but Plaintiff did not indicate that they had worsened. (R. at 811.) It was also noted that Plaintiff had been taking Topamax since 2003 or 2004, which is a treatment for both seizures and migraines.

---

[2] The Commissioner cites the results of several relatively benign MRIs and other scans contained in the Record. While the MRIs and other scans are obviously relevant to evaluating Plaintiff's seizures, the issues before the Court do not involve Plaintiff's seizures and the Court is not convinced that the scans are relevant to Plaintiff's migraines. To the contrary, according to the Mayo Clinic, it appears that MRIs and other scans are used to rule out other possible causes of headaches; they do not detect the presence or severity of migraines. (*See* https://www.mayoclinic.org/diseases-conditions/migraine-headache/diagnosis-treatment/drc-20360207 (last visited Feb. 4, 2022).)

In October 2018, Plaintiff went to the Headache Clinic at the Mercy Surgery Center, reporting that she experienced "a headache most days," (R. at 802), which she later quantified as "up to 4 migraine headaches per month that can last up to 3 days.") (R. at 805.) Among other things, Plaintiff was started on a prescription of Ajovy and advised to make certain lifestyle changes (such as limiting caffeine, getting adequate sleep, exercising, and changing her diet). (R. at 805-06.) She was also advised that use of over-the-counter headache medication could exacerbate her symptoms, (R. at 807), which is significant given that Plaintiff had been using such medications to combat her headaches. (R. at 804.)

In December 2018 Plaintiff reported that her headaches had improved since starting Ajovy and that she no longer experienced daily headaches. (R. at 772, 800.) In March 2019, she again confirmed that that her headaches had improved but she was reluctant to continue Ajovy because she believed that it was causing diarrhea and vertigo. (R. at 796.) The Ajovy was discontinued but her prescription of Topamax (which was prescribed for both "seizures and headache prevention") was continued and a prescription for Zomig was added. R. at 797.

In April 2019, Plaintiff was taken off Topamax due to concerns that it was affecting her memory; she was prescribed Keppra to address her seizures and Zomig to address her migraines, but her Maxalt later replaced the Zomig. As late as November 2019 it was noted that Plaintiff's "migraine headaches improve[d] significantly when [she] switched from Zomig to Maxalt." (R. at 981.) In December 2019, a prescription for Aimovig was added. (R. at 1021.)

In concert, then, the Record supports the ALJ's findings. Plaintiff worked with migraines for a significant number of years. She alleges that the migraines have gotten worse, but the medical records reflect that she made few complaints to doctors that reflect the seriousness she now alleges, and those records also indicate that treatment ameliorated the severity of her headaches. And, in

4

addition to discussing Plaintiff's medical records, the ALJ discussed Plaintiff's daily activities. (R. at 22.) Admittedly, some of those activities are more relevant to Plaintiff's other medical conditions; nonetheless, some bear on Plaintiff's claim that she suffers near-constant migraines. Plaintiff points out that a person need not be completely debilitated to qualify for benefits; however, the severe limitations described by Plaintiff are inconsistent with some of her daily activities. Plaintiff also refers to a Medical Source Statement prepared by a nurse practitioner that endorses Plaintiff's statements and opines that Plaintiff is unable to work. (R. at 909.) However, this is not a medical opinion because it contains a list of symptoms and does not purport to describe Plaintiff's functional abilities, 20 C.F.R. § 404.1513(a)(1), and an opinion that merely recites the claimant's subjective complaints is not entitled to any particular deference. *E.g., Andrews v. Colvin,* 791 F.3d 923, 929 (8th Cir. 2015). Moreover, the nurse's opinion as to whether Plaintiff could work is not a medical opinion in any event. *E.g., Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

In summary, at best the Record contains conflicting evidence. There was substantial evidence in the Record as a whole to support the ALJ's findings, and the Court cannot substitute its judgment for the ALJ's.

### III. CONCLUSION

For the reasons stated above, the Commissioner's final decision is affirmed.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
**DATE**: February 7, 2022    UNITED STATES DISTRICT COURT